W. M. LOGAN *v.* J. E. BROWN, *County Court Clerk.*

(*Knoxville.*   September Term, 1911.)

1. **PRIVILEGE TAXES.** Resident wholesale liquor dealer purchasing stock out of State is liable for privilege tax imposed by State statute.

Under the act of congress, known as the Wilson act (act of Aug. 8, 1890, ch. 728, 26 Stat., 313), providing that all intoxicating liquors transported into a State, and remaining therein for consumption, sale, or storage, shall, upon arrival therein, be subject to the operation of the laws in such State, enacted in the exercise of its police power, to the same extent as though such liquors had been produced therein, and shall not be exempt therefrom by reason of being introduced in original packages, the fact that a resident wholesale liquor dealer purchased all his stock without the State would not render a wholesaler's privilege tax imposed by a State statute violative of the commerce clause (art. 1, sec. 8) of the federal constitution. (*Post, pp.* 211-215.)

Acts cited and construed:   Acts 1909, ch. 479.

2. **TAXATION.**   Goods imported into this State for reshipment and distribution in other States are subject to taxation here.

Goods imported into this State, for the express purpose of reshipment and distribution to parties outside of the State, have come "to rest" within the limits of the State, and are, therefore, subject to taxation. (*Post, p.* 215.)

Cases cited and approved:   American Steel & Wire Co. v. Speed, 192 U. S., 500; General Oil Co. v. Crain, 209 U. S., 211.

3. **INTOXICATING LIQUORS.**   Subject to police regulation by exaction of a license fee from dealer.

The liquor traffic is a well recognized subject of police regulation; and the exaction of a license fee from a liquor dealer is an ordinary exercise of police power. (*Post, p.* 216.)

125 Tenn.—14

4. INTERSTATE COMMERCE. Imposition of privilege tax on wholesaler of liquors in this State imported from other States and sold into other States is not a regulation of.

The purchaser of intoxicating liquors at wholesale without the State, who stores them at his place of business in this State, and, upon receiving mail orders for same from purchasers without the State, breaks the packages in which they were received, and repacks them in suitable quantities to fill the orders, and ships the same to purchasers without the State, receiving payment by checks or money orders through the mail, and making no sales to persons within the State, may be subjected to the privilege tax imposed by statute upon wholesalers of intoxicating liquors without violating the commerce clause (art. 1, sec. 8) of the federal constitution; for the imposition of such tax on such business is not a regulation of interstate commerce. (*Post, pp.* 215, 216.)

Cases cited and approved: Fanning v. Gregoire, 16 How., 534; Conway v. Taylor, 1 Black, 603; Ferry Co. v. East St. Louis, 107 U. S., 365.

5. INTOXICATING LIQUORS. Sale for all nonbeverage purposes under State and federal license for such business.

One having a license from the federal government may lawfully sell intoxicating liquors for medicinal, mechanical, scientific, culinary, and all other purposes, except for beverage purposes alone, upon obtaining a license from the State or paying the privilege tax imposed for such business. (*Post, pp.* 217-219.)

Cases cited and approved: Kelly v. State, 123 Tenn., 516; Ficklen v. Taxing District, 145 U. S., 1.

6. SAME. Purchasing and receiving intoxicating liquors for sale and reshipment out of the State may be subjected to privilege tax by State.

Where a liquor dealer has his place of business in this State where he receives and stores intoxicating liquors produced without the State, and here prepares the same for reshipment

Logan v. Brown.

to purchasers in other States, this State may declare his acts a privilege, and tax him for such. (*Post, pp.* 219, 220.)

7. PRIVILEGE TAXES. Dealer is not relieved because he receives all his goods from other States and resells them to parties in other States.

The fact that a dealer, engaged in a business or occupation, imports his goods from other States, and after storing them here, sells and ships them to purchasers in other States, will not relieve him from an occupation tax. (*Post, pp.* 220-222.)

Cases cited and approved: Woodruff v. Parham, 8 Wall., 123; Brown v. Houston, 114 U. S., 622; Cargill v. Minnesota, 180 U. S., 452; American Steel & Wire Co. v. Speed, 192 U. S., 500.

---

FROM CAMPBELL.

---

Appeal from the Chancery Court of Campbell County. —H. G. KYLE, Chancellor.

CLARENCE TEMPLETON, for complainant.

ATTORNEY-GENERAL CATES and JOHN JENNINGS, for defendant.

---

MR. JUSTICE GREEN delivered the opinion of the Court.

This bill was filed by the complainant to recover a wholesale liquor dealer's privilege tax exacted of him by the defendant, the clerk of the county court of Campbell county. The tax was paid under protest, and suit brought for its recovery within the statutory time.

From a decree in favor of the complainant, defendant has appealed to this court. A stipulation as to the facts of the case is filed, as follows:

"It is agreed that on the trial of this case, the following facts shall be considered as properly proven:

"The complainant, William Logan, a citizen and resident of Campbell county, Tenn., and living in the town of Jellico, on March 14, 1911, opened and has since been conducting a wholesale business of selling liquors to citizens and residents of other States than the State of Tennessee. Said business has been and is being conducted in the following manner: Complainant's storehouse and place of business is in Jellico, Tenn., where the complainant keeps on hand a stock of liquors, wines, brandies, gins, and beers of an aggregate value of $3,000 to $3,500. These goods the complainant buys in wholesale quantities from liquor dealers in other States, and pays for them by check mailed by him in the postoffice at Jellico, Tenn. He orders these goods by mail; the orders being mailed by him at the postoffice in Jelico, Tenn. He places some orders with traveling salesmen representing nonresident liquors dealers. These orders, placed with such traveling salesmen, are likewise paid by checks, mailed at the postoffice in Jellico, Tenn. All of these orders, so filled by said nonresident liquor dealers, are delivered to a common carrier at a point in such foreign State for delivery to the complainant at Jellico, Tenn. All beer is thus purchased by complainant in quantities of not less than one barrel of bottled beer, and no keg beer is handled by him. All other

goods are purchased by the complainant in this manner, in quantities of not less than two cases.  A case is a box or package consisting of twelve quarts, or twenty-four pints, or forty-eight half pints.  These goods are stored by the complainant at his place of business in Jellico, Tenn., where the complainant then proceeds and conducts a selling business as follows:

"Complainant makes all sales by means of mail orders received by him at the postoffice at Jellico, Tenn., having been previously mailed to him by nonresidents of the State of Tennessee at points within other States than the State of Tennessee.  These mail orders are accompanied by checks or postoffice or express money orders. Complainant makes no sales to any parties in the State of Tennessee.  All goods purchased by him are purchased from parties outside of Tennessee, and all goods sold by him are sold to parties outside of Tennessee. The wholesale packages which he buys are stored by him at his place of business and broken for sale and shipment according to the demands of his sales.  All sales made by complainant are consummated by packing the goods which he has sold and placing them in the office and charge of a common carrier of freight or express at Jellico, Tenn., for transportation to the party making the order outside of the State.  The complainant refused and resisted the payment of the privilege tax demanded by the defendant, on the grounds stated in the bill, but paid same on the 7th and 8th of June, 1911, in the amounts stated in the bill, and for the reason that the clerk of the county court of Campbell county, with a

duly authorized officer, was present at his place of business with a distress warrant, demanding payment thereof, or threatening a levy and sale of his property upon his refusal. Payment was made under protest and duress, and so received by the defendant. Complainant took out and paid for United States revenue license, as required by the United States statutes, and not for the purpose or intention of violating the liquor laws of Tennessee. The complainant's application for said government license shows on its face that complainant applied for same for the sole purpose of doing an interstate business."

As will be seen from this statement, the complainant is a resident of Tennessee, has a place of business in Jellico, Tenn., and a considerable stock of liquors there, which he is engaged in selling. Obviously he is a wholesale liquor dealer. As such, he is liable for the privilege tax imposed on that business by chapter 479, Acts of 1909, unless he is relieved therefrom by reason of the fact that he is making his sales to parties outside the State.

The circumstance that he purchases all his stock without the State has no weight in the case. The act of congress, known as the Wilson act (Act Aug. 8, 1890, ch. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]), provides:

"That all fermented, distilled, or other intoxicating liquors or liquids transported into any State or territory, or remaining therein, for consumption, sale or storage therein, shall upon arrival in such State or terri-

tory, be subject to the operation and effect of the laws of such State or territory, enacted in the exercise of its police powers, to the same extent, and in the same manner, as though such liquids or liquors had been produced in such State or territory, and shall not be exempt therefrom by reason of being introduced therein in' original packages or otherwise."

So it is frankly conceded by learned counsel for complainant that the question here would be the same and complainant would have the same rights, whether his liquors in stock were shipped into this State, or produced in this State. The only question, therefore, is whether complainant's business is exempt from the privilege tax demanded by the State, on account of the fact that his sales have been made to nonresidents. In other words, is the taxation of a business such as his a violation of the commerce clause (article 1, section 8) of the federal constitution?

The stock of goods which he has in his storehouse is certainly not exempt from State taxation. Even though he imports it for the express purpose of reshipping and distributing all of it to parties outside of the State, still it has come "to rest" within the limits of the State, and is therefore subject to taxation.. *American Steel & Wire Company* v. *Speed,* 192 U. S., 500, 24 Sup. Ct., 365, 48 L. Ed., 538; *General Oil Co.* v. *Crain,* 209 U. S., 211, 28 Sup. Ct., 475, 52 L. Ed., 745.

Neither is the complainant protected from the privilege tax by the commerce clause of the federal constitu-

tion, in our opinion, and this, we think, is true for several reasons:

First. The liquor traffic is a well-recognized subject of police regulation. The exaction of a license fee from a liquor dealer is an ordinary exercise of police power. The mere levy of an occupation tax upon a liquor dealer, a resident of Tennessee, with his house and business establishment in Tennessee, even though he ships his sales to other States, cannot be held to be a regulation of commerce between the States. Certainly it is no more a regulation of commerce than the imposition of a tax upon the owners of ferries whose boats ply between landings in different States. The power of the State so to tax ferries was upheld in *Ferry Co. v. East St. Louis,* 107 U. S., 365, 2 Sup. Ct., 257, 27 L. Ed., 419.

A license was required in that case by the city of East St. Louis, and the court said:

"The exaction of a license fee is an ordinary exercise of police power by municipal corporations. When, therefore, a State expressly grants to an incorporated city, as in this case, the power to license, tax, and regulate ferries, the latter may impose a license tax on the keepers of ferries, although the boats ply between landings lying in two diffrent States, and the act by which this exaction is authorized will not be held to be a regulation of commerce." *Ferry Co. v. East St. Louis,* supra; also *Fanning v. Gregoire,* 16 How., 534, 14 L. Ed., 1043; *Conway v. Taylor,* 1 Black, 603, 17 L. Ed., 191.

Second. The agreed statement of facts is peculiarly worded. Referring to complainant's selling business, it says that he "makes all sales;" that payments "are" made to him; that goods "are stored" by him, etc. The present tense is used throughout. There is no distinct averment in the stipulation of facts that the complainant has not heretofore made sales in Tennessee.

If we concede, however, that it is intended to be said that complainant has never made sales to parties within the State, still there is no guaranty that he will continue so to exclude such parties from buying hereafter. He has his house in Tennessee, his liquors in Tennessee, his equipment and location, and is prepared to make sales in Tennessee. He is entitled, under the law, to sell his liquor for medicinal, mechanical, scientific, culinary and all other purposes, save for beverage purposes alone. *Kelly* v. *State* (Wholesaler's Case), 123 Tenn., 516, 132 S. W., 193.

Looking to the organization and equipment of complainant's business, it must be conceded that he is engaged in the general occupation of a liquor dealer in Tennessee. Such occupation is declared a privilege and a tax is demanded by the State for its pursuit.

The fact that particular sales so far made by him have been to nonresidents does not relieve his business of the privilege tax, by reason of any provision of the federal constitution.

This conclusion seems to us fully warranted from the case of *Ficklen* v. *Taxing District*, 145 U. S., 1 12 Sup. Ct., 810, 36 L. Ed., 601.

In this case, the court considered a merchandise broker's tax, which was imposed upon certain parties in the taxing district of Memphis, the business of one of whom was entirely between nonresident principals.

Speaking of the case, the court said:

"In the case at bar, the complainants were established and did business in the taxing district, as general merchandise brokers, and were taxed as such under section 9 of chapter 96 of the Tennessee Laws of 1881, which embraced a different subject-matter from section 16 of that chapter. For the year 1887, they paid the tax of $50 charged, gave bond to report their gross commissions at the end of the year, and thereupon received, and throughout the entire year held, a general and unrestricted license to do business as such brokers. They were thereby authorized to do any and all kinds of commission business, and became liable to pay the privilege tax in question. It was fixed in part, and in part graduated according to the amount of commissions received. Although the principals happened, during 1887, as to the one party to be wholly nonresident, and as to the other largely so, this fact might have been otherwise then and afterwards, as their business was not confined to transactions for nonresidents."

The authorities are reviewed to a considerable extent, and the result of the entire case we find to be well summarized in one of the headnotes, as follows:

"A State legislature may tax trades, professions, and occupations in the absence of inhibition in the State constitution in that regard; and, where a resident citizen is

Logan v. Brown.

engaged in a general business, subject to a particular tax, the fact that the business done chances to consist, for the time being, wholly or partially in negotiating sales between resident and nonresident merchants of goods situated in another States, does not necessarily involve the taxation of interstate commerce, forbidden by the constitution."

While it is true, at the conclusion of this opinion, the following language is used:

"What position they would have occupied if they had not undertaken to do a general commission business, and had taken out no license therefor, but had simply transacted business for nonresident principals, is an entirely different question, which does not arise upon this record." While it is true this languae is used, it has no application here, for this complainant is no broker or agent, doing business for nonresident principals. He is a resident of Tennessee, doing business for himself in Tennessee. The circumstance that he has failed to apply for license to engage in the occupation of a liquor dealer does not determine the question whether or not he is engaged in such general occupation. We think he is so engaged, and is accordingly liable for the tax, although his sales, so far, have been to purchasers without the State.

Third. The tax imposed upon complainant has reference to his business within the State, and interposes no obstacle to his sales and shipments out of the State.

He has his business house in Tennessee, where he gathers his stock goods. He here receives his purchases,

Logan v. Brown.

breaks bulk, assorts his stock, and here keeps it. He gets his orders, prepares his shipments, delivers to the carriers, and receives his remittances in Tennessee. In fact, every detail of his business is within, and under the protection of, the State of Tennessee, except that he makes his sales to parties without the State, and purchases his stock from outside the State, which latter incident has no bearing on the controversy, by reason of the provisions of the Wilson act, heretofore mentioned.

We are of opinion that the State has a right to declare the doing of these things within her borders a privilege, and to tax such privilege accordingly.

The State may tax a business or occupation, and the fact that the stock of a particular dealer, engaged in such business or occupation, happens to have been bought and brought in from some other State will not relieve him of the tax. *Woodruff* v. *Parham*, 8 Wall., 123, 19 L. Ed., 382; *Brown* v. *Houston*, 114 U. S., 622, 5 Sup. Ct., 1091, 29 L. Ed., 257.

As was observed by the supreme court, in the case of *American Steel & Wire Company* v. *Speed*, supra, these two cases announced a doctrine years ago which has never since been questioned, and "has become the basis of the taxing power exerted for years by all the States of the union. The cases themselves have been approvingly referred to in decisions of this court too numerous to be cited."

If a dealer, engaged in a particular business, may be required to pay a tax levied upon that business, even though he purchases all his goods without the State, we

can perceive no reason why a dealer, engaged in a particular business, may not be required to pay a tax levied upon that business, even though he sells all his goods without the State. The tax is no more a burden on commerce in the one instance than in the other. It is not exacted of the interstate traffic in either case, but of the business in both cases.

Upon this question, the somewhat recent holding of the supreme court, in *Cargill* v. *Minnesota,* 180 U. S., 452, 21 Sup. Ct., 423, 45 L. Ed., 619, seems determinative.

In that case, the State of Minnesota had passed an act regulating the business of grain elevators. Among other things, it required that all persons operating such elevators should obtain a license therefor from the proper State authorities. A fee was charged for this license. Considerable business was transacted at these elevators in the way of purchasing wheat, but the entire sales of the particular elevator considered in the case referred to were to nonresidents, and all its grain was sold and shipped to parties outside the State.

It was urged upon the court that the license required of this elevator, in view of the character of business it was doing, was a violation of the commerce clause of the federal constitution.

In response to this, the court said:

"It is also contended that the requirement of a license from the defendant company is inconsistent with the power of congress to reulate commerce among the States. This view cannot be accepted. The statute puts

no obstacle in the way of the purchase, by the defendant company, of grain in the State, or the shipments out of the State of such grain as is purchased. The license has reference only to the business of the defendant at its elevator and warehouse. The statute only requires a license in respect to business conducted at an established warehouse in the State, between the defendant and the sellers of the grain. We do not perceive that, in so doing, the State has intrenched upon the domain of federal authority, or regulated, or sought to regulate, commerce. In no real or substantial sense is such commerce obstructed by the requirement of a license." *W. W. Cargill Co.* v. *Minnesota, ex rel., etc.,* 180 U. S., 452, 21 Sup. Ct., 423, 45 L. Ed., 619.

We are of opinion that the foregoing is sound authority upon which to base the conclusion heretofore announced, that this complainant is only taxed with reference to matters transacted by him at his business house, and as to his purchasing business and other parts of his business, and does not refer to or burden his sales to parties outside the State.

For the reason stated, the decree of the chancellor will be reversed, and the bill dismissed.