### JOHN G. MARTUS ET AL. v. PETER HOUCK.

*Contractor bound by specifications.*

A building contractor is bound by the specifications of his contract unless they are waived; and the other party to the contract cannot be forced to accept work that does not conform thereto, even though recoupment is allowed for deficiencies.

Error to Lapeer. Submitted Oct. 17. Decided Oct. 22.

ASSUMPSIT. Defendants bring error.

*Moore & Bentley* and *S. B. Gaskill* and *W. W. Stick-ney* for plaintiffs in error.   A contractor is not entitled to compensation for a building that is not finished according to the contract, *Pullman v. Corning*, 9 N. Y., 93; *Smith v. Brady*, 17 N. Y., 173; *Britton v. Turner*, 6 N. H., 481; *Glacius v. Black*, 50 N. Y., 145.

*Geer & Williams* for defendant in error.   A building contractor does not forfeit his right to payment if there has been no willful or essential departures from the contract, *Sinclair v. Tallmadge*, 35 Barb., 602; *Smith v. Mc-Cluskey*, 45 Barb., 615; *Johnson v. DePeyster*, 50 N. Y., 666; *Lighthall v. Colwell*, 56 Ill., 108; *Norris v. Sch. Dist.*, 12 Me., 293; *Glacius v. Black*, 67 N. Y., 563, and the question whether it has been substantially complied with is for the jury, *Smith v. Clark*, 58 Mo., 145; if it has been, the contractor can recover on the common counts, *Hayward v. Leonard*, 7 Pick., 181: *Allen v. McKibbin*, 5 Mich., 449; the person for whom the building was erected can recoup for the contract price as damages, the loss in value resulting from the variance from the contract, *White v. Oliver*, 36 Me., 92; *Bragg v. Bradford*, 33 Vt., 36; acceptance is not necessary to give the contractor a right to recover, as the building attaches to the realty and goes to the owner with his possession of the land, without the formality of delivery and acceptance, *Crook-shank v. Mallory*, 2 Green (Ia.), 257.

COOLEY, J.   The controversy here arises out of a contract for the building of a house of worship. The defendant in error was the contractor, and sued to recover the contract price, claiming to have fully performed on his part.  The building had never been accepted, and the defense was that it did not correspond with the contract.

In the following particulars variances between the contract and the performance appear to have been established:

The building was to have fifteen windows, and it had but thirteen.

The floor was to be of pine lumber, an inch and a half thick, and it was but an inch and a quarter.

Outside doors were to be two inches thick, and they were only an inch and three-fourths.

The gallery was to be supported by four posts, and only two were put in.

The studding was to be three by eight inches, and some of it was two by eight.

These were the most important variances,—perhaps all of them. An excuse was made for the deficiency in number in the posts and windows, depending upon facts amounting to a waiver in strict compliance, the sufficiency of which could not be passed upon by us. No excuse that can fairly be called reasonable was made for the other defects.

The plaintiff counted upon the contract, and also on a *quantum meruit*. The defense insisted that they were under no obligation to receive the building at all until it was made to correspond to the agreement; the plaintiff, on the other hand, claimed to recover the contract price, admitting at the same time the right of the defense to recoup for any deficiencies. The jury gave the plaintiff the contract price with a deduction equivalent to about one-sixteenth part of the whole.

The important questions all arise upon the charge of the court, and to an understanding of that we need only state further that there was some evidence tending to show that the building with such studding as was used was not sufficiently safe for the purpose for which it was erected.

The following instructions were requested by the defendants:

That the church not having been constructed according to the contract, and the defendants not having accepted it, they are not bound either to pay the contract price, or to accept it subject to recoupment for deficiencies.

That when parties enter into a written agreement for the construction of a building, they have a right to insist that it shall be constructed according to the contract, and are not obliged to accept and pay for one that does not comply substantially with the contract.

That if defendants must pay for the building, the measure of recoupment would be what it would cost to so change the building as to make it conform to the terms of the contract, and not the difference in value between the building as it is and as it would be if completed according to the contract.

These instructions were refused, but the jury were told in substance that if the building was not completed according to the contract, the plaintiff was entitled to recover, but with such allowance from the contract price as would be equal to the cost of making the building what it was agreed it should be. To this, however, he added the qualification, in respect to the studding, that 'the defendants would not be entitled to tear this out, and substitute at the expense of the plaintiff studding of the size stipulated for, but that the difference in the value of the building, caused by this departure from the contract, the defendants should be allowed for. This qualification we infer was made on the supposition that the cost of making the building what was agreed in this particular would be greater than its importance would justify.

Had the defendants taken possession of this building and applied it to the uses for which they were constructing it, the charge of the circuit judge would in the main have been applicable to the case and might have been supported. But as applied to the facts of this case it advances a doctrine that is somewhat startling. These defendants contracted for a building of a certain sort, to be constructed according to specifications calculated for durability and strength. It was to be a very plain building, but they had some notions of their own in respect to style, which were to be carried out in the plan. Can it be that the law will permit the contractor to depart from these specifications in noticeable particulars and still compel the defendants to accept the building and make payment for it, subject only to such deductions as twelve men shall believe are equal to the difference in value between the building they bargained

for and the building he decided to give them? Or—which seems to have been more exactly the idea of the instruction—with a deduction equal to the cost of such changes as shall make the building what was agreed upon? Can it be that if defendants required certain things to be done with a view to strength and safety, the plaintiff may disregard these and at last resist the demand for strict compliance by showing that he cannot now do what he should have done before without great and ruinous cost? If such is the law it becomes of the highest importance to ascertain, if we can, what protection a party can have in entering into such contracts, or whether he can have any at all.

We think the learned circuit judge was in error in giving the instructions he gave and in declining to give those the defendants requested. The plaintiff had purposely kept the control of the building in his own hands until he tendered it to the defendants as completed according to the contract, and demanded payment of the contract price. Under such circumstances we understand that it was his duty to know that he had performed his agreement, and if defects were pointed out, to correct them. If a door was too light, it was his duty to substitute such an one as was agreed upon, and he had no business to tell the defendants their remedy was, if they did not like his changes, to get somebody else to put in the door they bargained for. If he had enclosed within the walls studding less substantial than the contract required, it was his duty to make the correction, and the expense of doing so, when the fault was exclusively his own, could not be taken into the account by way of excuse. He could not put them to the election of making the expensive change at their own cost, or as the alternative, of occupying in discomfort and fear a house of meeting where they might believe or imagine their lives would be in peril. When they had bargained for such strength in the building as they deemed important in order that they might worship without having

their attention distracted by real or imaginary danger every time the wind blew, they had a right to have it, and that too without paying for it twice over merely because other people might think the weaker building just as good or just as safe. They agreed with the plaintiff upon the building they should have, and it is only when he tenders such a building or when they appropriate to their own use something different, that he is in position to bring suit for constructing it.

The equitable doctrine that every man should pay for that of which he has taken the benefit, even though it was not just what he contracted for, has been fully recognized in this State. *Allen v. McKibbin*, 5 Mich., 449. But we have never held that a man can be compelled to take and use one thing when he bargained for another and declines to receive the substitute tendered. Sometimes the circumstances may be such that he has no choice, especially in the case of improvements upon real estate; but this case is not one of that sort. It is as possible for the plaintiff to put the building in the condition agreed upon as for any one else, and there is no equity in any doctrine which will compel these defendants, if they want what was agreed upon, to hunt up some one else who will contract to make the necessary changes, and who perhaps in turn will demand pay for an incomplete or substituted performance.

In *Wildey v. School District*, 25 Mich., 419, we held explicitly that one contracting for a building to be put up according to certain specifications had a right to have what he bargained for. Unimportant variances may be overlooked or compensated for under a variety of circumstances which are not in question here, but departures from the contract which are susceptible of correction no one can be compelled to overlook or waive. Protection to equities cannot require it, and the acceptance of such a doctrine as the plaintiff here insists upon would take from an unscrupulous contractor the chief inducement to keep his promises. What is it to him whether or not

he lives up to his agreement if in any event he may collect for such performance as he tenders, and if the party contracting with him has no choice but to take at some price the building the contractor has seen fit to put up? The sanction the law would give to contracts under such a doctrine would as nearly as possible be worthless.

To suggest an extreme case; if this plaintiff had bargained to put up for one of his neighbors a Gothic house, planned to his taste, and had tendered instead the Gothic house varied with a Mansard roof, or something else equally out of harmony, and been met with a refusal to accept the substitute, we do not perceive why he might not answer with success: "I cannot change this to what was promised, because it would be too expensive: you must receive the building, but if on taking the evidence of the community the preponderance seems to be that this building is of less value than the one I agreed to build, I will pay the difference." This, it must be conceded, is doctrine not to be accepted in the law on any concession of its being equitable or just.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.