[No. 11017.   Department Two. — May 19, 1888.]

CITY OF NAPA, RESPONDENT, *v.* A. Y. EASTERBY
ET AL., APPELLANTS.

OFFICIAL GRADE OF STREET — TWO SETS OF PROCEEDINGS TO ESTABLISH. —
    If the proceedings to establish the official grade of streets are void, they
    may be disregarded and fresh proceedings commenced.
OFFICIAL GRADE OF STREETS IN CITY OF NAPA — POWER OF BOARD OF
    TRUSTEES — PETITION OF PROPERTY OWNERS. — It is not necessary that
    the official grade of each street in the city of Napa be established sepa-
    rately.   The board of trustees has power to establish the grade by a
    general ordinance, and this may be done without petition of property
    owners, provided no charge therefor is imposed upon them or upon the
    city.
ID. — PUBLICATION OF ORDINANCE REFERRING TO MAPS AND BENCH-BOOKS.
    Where an ordinance establishing the official grade refers to maps and
    bench-books in the archives of the city, such maps and bench-books need
    not be published.   All that is necessary to be published is what is en-
    tered in the ordinance-book.
FORM OF ORDER THAT STREET WORK BE DONE — PUBLICATION. — An or-
    der that street work be done is not an "ordinance" within the meaning
    of the charter, and need not follow the form, "The board of trustees of
    the city of Napa do hereby ordain," etc., and need not be published.

APPEAL from a judgment of the Superior Court of
Napa County, and from an order refusing a new trial.

The action was brought to foreclose a street assess-
ment for work done in the improvement of Randolph
Street in the city of Napa.   On a former trial, judgment
was entered in favor of the plaintiff, which was reversed
on appeal, the opinion being reported in 61 Cal. 518.
The further facts are stated in the opinion.

*William & George Leviston*, for Appellants.

*Estee, Wilson & McCutchen, Oscar Coglan*, and *W. F.
Henning*, for Respondent.

HAYNE, C. — Action upon a street assessment.   Judg-
ment was given for the plaintiff, and the defendants
appeal.   As is usual in such cases, every point with the

least semblance of merit is made.   We deem it sufficient
to notice the following:—

1. It is said that the official grade was not established.
Upon the former appeal (61 Cal. 509) the judgment in
favor of plaintiff was reversed, because it did not appear
that the ordinance purporting to establish the grades
had been published by order of the board.   This de-
cision necessarily affirms that *unless* it appears that the
ordinance was published by order of the board, the offi-
cial grades were not established; and that the conse-
quence is, that subsequent proceedings for grading, etc.,
are void.   This has become the law of the case.

Upon the trial two attempts to prove that the official
grade was established were made.   The first proposition
was, that the grade was established by ordinance 42.
With reference to this, we are inclined to think that the
position of the appellants is correct, and that there was
no sufficient proof of the publication by order of the
board, within the rule laid down by the former decision.
Assuming this to be so, then the subsequent proceed-
ings, taken upon the idea that the grade was established,
were void.   If such subsequent proceedings were void,
there can be no reason why the board should not dis-
regard them entirely and commence fresh proceedings.
This was what it would seem they did do by their second
attempt to establish the grade.

The second attempt was by ordinance 77.   This or-
dinance (which, though somewhat meager we think, was
sufficient) was duly ordered to be published, and was
published for the requisite period; and at the expiration
of the period of publication, the proceedings upon which
the assessment rests were commenced.   The only objec-
tions which are taken to this ordinance are the follow-
ing:—

(*a*) It is urged that the board had no power to estab-
lish the official grade except upon petition of the property
owners, and that the grades of the streets must be estab-

lished separately, and not altogether, as was done here. This view was set forth in the opinion of three of the justices upon the former appeal. But a majority of the court did not concur in this portion of the opinion, and it is obvious that it did not become the law of the case, but was merely the individual opinion of three members of the court. The argument in favor of the position is forcible. But the inconvenience resulting from such a construction is so great that we think if any other construction is fairly open, it should be adopted. And we think there is room for another construction.

The provisions of the charter in relation to the subject are as follows:—

"Sec. 11. . . . . The board of trustees shall have power: . . . . 3. *To establish the grade* of all streets, avenues, and alleys, and to require and enforce conformity thereto." (Laws 1877–78, p. 1013.)

"Sec. 18. The city of Napa shall not *pay* for establishing the grade, grading, working, improving, or repairing streets, avenues, or alleys, laying down or constructing sewers therein, or sidewalks or crosswalks thereon; but all such expenses shall be assessed upon the property fronting on such streets, avenues, and alleys, as hereinafter provided." (Laws 1877–78, p. 1017.)

"Sec. 19. When the owners of more than one half in frontage of the property fronting on any street . . . . shall desire *to have the grade established,* or to grade, fill, plank, pave, macadamize, or gravel the same, construct sidewalks along or sewers therein, or otherwise improve or repair the same, *and shall petition* the board of trustees in writing, asking that the same may be done, the board may order said work to be performed as requested, *at the expense of the property* fronting on said street." (Laws 1875–76, p. 556.)

"Sec. 30. The board of trustees may at any time, without petition, by an order entered in the journal of their proceedings, provide for grading, filling, planking,

paving, macadamizing, or graveling streets, avenues, alleys, or portions thereof, constructing sidewalks along or sewers therein, or otherwise improving or repairing the same, and shall proceed in letting contracts, and in assessing the expense of said work upon the property chargeable therewith, and enforcing the same in the same manner as in cases of assessments made upon petition." (Laws 1877–78, p. 1017; and see Laws 1875–76, p. 557.)

The argument against the validity of the ordinance is, in substance, that the city had no power to pay for establishing the grades; that 'the expense thereof must be charged upon the property owners according to frontage, and that they could only be so charged where there had been a petition that the grade be established.

Now, it is perfectly true that the city had no power to pay for establishing the grades, and that the property owners could not be compelled to pay for it in the absence of a petition. But is the power to establish the grade commensurate with the power to pay or to compel payment therefor? Suppose that some public-spirited surveyor had offered to do the work for nothing; would the board have been powerless to accept the offer? Or suppose that a portion of the citizens, chafed at what they might consider undue conservatism on the part of the property owners of the locality, should subscribe the amount necessary to pay for the expense of the work; would the board have no power to order the work to be done at their expense? Or suppose that the actual work of surveying had been done long before, and the maps and plans made; would it be necessary that the property owners should petition to have such work done a second time, and subject themselves to a useless expense when the maps, etc., lay ready to their hands?

We cannot think that there would be a want of power in such cases. And if not, then the power to establish the grades is not absolutely commensurate with the

LXXVI. CAL.—15

power to pay or to compel payment therefor. But if this be granted, the foundation for the argument against the validity of the grades is gone. If the power to adopt any particular grade is not commensurate with the power to pay or to compel payment therefor, then the former power may exist, although the latter does not; and the result of its exercise may be valid, although nothing can be collected from the property owners, or, notwithstanding the fact that former trustees may have unlawfully appropriated the city's money to pay for it.

There is nothing in the nature of the proceedings which makes against this construction. It does not take away from the property owners all right to determine what work shall be done. For although when the grade is established the board may order certain work to be done without petition, yet the property owners of the locality may put a veto on it by filing a protest. (Sec. 30.)

Nor is there anything in the language of the charter which negatives the construction. The charter expressly provides that the board shall have power "to establish the grade of all streets," etc. (Sec. 11.) This grant of power is unlimited by anything, unless it be the provision in a subsequent place with reference to the petition of the property owners. But this latter provision is not inconsistent with an unconditional grant of the power. It is simply that when the property owners of a locality "shall petition the board of trustees in writing, asking that the same may be done, the board may order said work to be performed, as requested, *at the expense of the property owners.*" (Sec. 19.) If there is no petition, it cannot be done at the expense of the property owners. But this a different thing from saying that it cannot be done at all.

We think, therefore, that the board had the power to pass the ordinance establishing the official grades.

(*b*) It is contended that the maps and bench-books to

which the ordinance refers were not published.   The argument is, that the reference to the maps, etc., makes them a part of the ordinance, and that the requirement as to publication means that the *whole* ordinance be published.

When an ordinance or a deed refers to a separate document, it is not true as a matter of fact that the two are one and the same.   The law for some purposes considers one a part of the other.   But this fiction will not be extended to any such absurd consequences as is contended for here.   Where, for example, a deed refers for a description to a map in the office of some city official, it can hardly be supposed that the map must be carried to the recorder's office and filed there as a part of the deed.   And so here, all that is required to be published is the ordinance itself,—the thing which is entered in the ordinance-book.

(c) It is said that the ordinance as published was not properly certified.   The authentication was as follows:—

"In board of trustees, finally passed this twenty-third day of January, A. D. 1879.        JOSEPH HENRY,

"President of the Board of Trustees of the City of Napa.

"Attest: J. N. Wallingford, Clerk."

And the copy as published contained the following addition: "Published by order of the board, J. N. Wallingford, Clerk."   This, we think, was sufficient authentication.

2. It is next objected that there was no order that the work be done.   The record shows the following order:—

"*Resolved*, That the board deem the proposed work on Randolph Street expedient, and that there is no valid objection thereto.   The board *order that said work be done*," etc.

The point seems to be, that the above order is not "in the form of an ordinance," that is to say, that it did not comply with section 34 of the charter, which provides that "the style of all city ordinances shall be as follows: 'The

board of trustees of the city of Napa do hereby *ordain* as follows.'"

In the first place, we think that this provision is merely directory. There is nothing in the case of *Creighton* v. *Manson*, 27 Cal. 629, which is contrary to this view.

In the second place, the provision applies only to *ordinances,* and not to mere resolutions or orders. The charter provides that the board may pass "by-laws, resolutions, and ordinances." (Laws 1877–78, p. 1013, sec. 11.) There is evidently a difference between these modes of action. (See 1 Dillon on Municipal Corporations, 3d ed., sec. 307, and notes.) It is unnecessary to consider what is the precise difference. It is sufficient to say that in our opinion the order was not an "ordinance," and that the provision does not apply.

It is further objected that this order was not published. But being a mere resolution, it does not come under the general provision requiring "ordinances" to be published, and there is no specific requirement that it be published. (See Laws 1874–75, p. 149, sec. 22, and Laws 1877–78, p. 1017, sec. 30.) Therefore no publication was necessary.

3. It is contended that there was a protest of two thirds of the property owners, under section 30 of the charter. But the court finds that there was no such protest; and we think the evidence is sufficient to justify the finding. (See testimony of Lyman, fol. 283.)

4. Finally, it is said that "the proceeding was an unmitigated fraud." The finding is, that there was no fraud; and we think the evidence sustains the finding.

We therefore advise that the judgment and order appealed from be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

Hearing in Bank denied.