SOUTHERN OPERATING CO. *v.* CITY OF CHATTANOOGA *et al.*

(*Knoxville.* September Term, 1913.)

1. APPEAL AND ERROR. Scope of review. Pleading. Demurrers.

While ordinarily a demurrer bad in part must be overruled altogether, the supreme court, since the enactment of the statute allowing appeals from decrees overruling demurrers, may, when the decision would greatly narrow the litigation, depart from that rule and determine the propriety of one ground of demurrer, though another ground is bad. (*Post, pp.* 200, 201.)

Cases cited and approved: Riddle v. Motley, 69 Tenn., 468, 473; Phoenix Insurance Co. v. Day, 72 Tenn., 247, 249; Puckett v. Richardson, 74 Tenn., 49, 65; Berry v. Wagner, 81 Tenn., 591, 599; Ballentine v. Mayor, 83 Tenn., 633, 650.

2. MUNICIPAL CORPORATIONS. Ordinances. Reference.

Where a municipal ordinance referred by number to chapter 593 of the Acts of the General Assembly for 1909, and there was no such numbered chapter in the published acts, that part of the reference must be treated as wholly nugatory, but it will not impair the validity of the ordinance if there is sufficient otherwise to identify the act intended to be incorporated. (*Post, pp.* 201, 202.)

Acts cited and construed: Acts 1909, ch. 479.

Cases cited and approved: Napa v. Easterly, 76 Cal., 222; Kreulhaus v. City of Birmingham, 164 Ala., 623; Richards v. Town of Magnolia, 100 Miss., 249; Dismukes v. Town of Louisville, 101 Miss., 104.

3. MUNICIPAL CORPORATIONS. Ordinances. Reference to statutes.

A city ordinance declared that each vocation, occupation and business named in chapter 593 of the Acts of the General Assembly for 1909, known as the "Revenue Bill," should be a

privilege within the city, and the rate of taxation on such privileges should be the same for the city for the fiscal year as provided in the revenue bill. The Acts of 1909 contained no chapter 593, but chapter 479, entitled "An act to provide revenue for the State of Tennessee and the counties and municipalities thereof," provides in section 4 that each occupation thereinafter named shall bear a certain tax, and thereafter enumerates various taxable occupations. *Held*, that as no person reading the ordinance and Acts of 1909 could fail to find the statute in question, it was properly incorporated into the ordinance by reference; incorporation by reference being recognized in case of deeds where the description may be so incorporated and in case of ordinances so far as the inclusion of directions and specifications   (*Post, p.* 204.)

### 4. MUNICIPAL CORPORATIONS.  Ordinance.  Reference.

The Chattanooga ordinance, which in fixing privilege taxes upon occupations attempted by reference to incorporate the Revenue Act of 1909, is not rendered invalid because sections 5 and 7 of the act referred to a class of privileges over which municipal corporations could not have any control, because the tax is required to be paid directly to the State; for the purpose of the ordinance was obviously to confine its application to those forms of privilege which were open to municipal taxation. (*Post, pp.* 204, 205.)

Acts cited and approved:   Acts 1909, secs. 4, 5, 7.

### 5. MUNICIPAL CORPORATIONS.  Ordinances.  Reference.

Where a municipal ordinance incorporates by reference a general statute, the statute in its entirety need not be set out in the ordinance or entered upon the minutes of the corporation. (*Post, pp.* 204, 205.)

### 6. COMMERCE.  Interstate commerce.  Burden upon.

An occupation tax may be imposed upon one engaged in the sale of liquors, though all of his purchases and all of his sales are made without the State, without imposing a burden on interstate commerce; his business being situated within the State.  (*Post, p.* 206.)

Cases cited and approved:   Logan v. Brown, 125 Tenn., 209;
Southern  Operating  Co.  v.  Hays,  Ms.,  Knoxville,  September
term.

FROM  HAMILTON.

Appeal from Chancery Court, Hamilton County.—T.
M. McConnell, Chancellor.

Coleman Frierson, for appellants.

Littleton, Littleton & Littleton, Williams & Lan-
caster, and Pritchard, Allison & Lynch, for appellee.

Mr. Chief Justice Neil delivered the opinion of the
Court.

The bill in this case was filed to enjoin the collection
of a privilege tax which it is alleged the city was about
to collect from complainant as a liquor dealer.

Three grounds of relief are stated:   Firstly, that
complainant, although engaged in the sale of liquor and
having its place of business within the city of Chatta-
nooga, makes all of its purchases outside of the State
of Tennessee, and likewise sells only to persons be-
yond the borders of the State, has so conducted its
business from the start, and will continue this method
of business; therefore that it is engaged wholly in in-
terstate commerce and is protected by the commerce
clause of the Constitution of the United States, and
that the tax in question would impair its rights there-

under. Secondly, that the ordinance is fatally defective in that it is fatally uncertain, because it purports to make specific the tax to be imposed by reference merely to an act of the legislature of the State of of Tennessee by the number of the chapter, when there is no such number, and by designation as the "Revenue Bill" when there is no bill so known in the Acts of 1909. Thirdly, that if the reference should be held good, still inasmuch as the law requires ordinances to be recorded, and the matter referred to was not recorded on the minutes of the corporation, the ordinances would be void for that reason.

There are two ordinances set forth in the bill. The first reads:

"Ordinance No. 1351.

"An ordinance fixing the rate of privilege taxation in the city of Chattanooga, for the fiscal year beginning October first, 1911, and ending September 30, 1912.

"Section 1. Be it ordained by the board of commissioners of the city of Chattanooga, that each vocation, occupation, and business named in chapter 593 of the Acts of the General Assembly of the State of Tennessee, for 1909, known as the Revenue Bill, be, and the same is hereby declared to be a privilege in the city of Chattanooga, and the rate of taxation on such privileges shall be the same for said city for the fiscal year beginning October 1, 1911, and ending Sepember 30, 1912, as provided in said State Revenue Bill.

"Sec. 2.  Be it further ordained that this ordinance take effect two weeks from and after its passage, the public welfare requiring it."

The second ordinance is numbered 1401, and is worded like the one already copied except that it undertakes to provide for the fiscal year beginning October, 1912.

There was a demurrer to the bill containing two grounds.  The first makes the point, in substance, that under the facts stated the complainant is liable for the tax which the city is endeavoring to collect from it.

The second ground is that, under the facts stated, there was no fatal uncertainty in the ordinances, and that they are valid.

The chancellor overruled both grounds of demurrer, but under our statute applicable to the subject granted an appeal to this court.

It is first insisted that each of these grounds of demurrer, while in terms addressed to the whole bill, if good at all, could be applicable only to separable parts thereof; hence they were properly overruled under the general rule that demurrers not good to the whole bill, when addressed thereto, are bad even if good to a part only.  Without undertaking to determine whether the demurrers are properly characterized we think this is a case for the application of an exception to the general rule which has been established in this State.  It is said in *Riddle* v. *Motley,* 1 Lea, 468, 473, that while the settled rule of chancery practice that a demurrer bad in part must be overruled alto-

gether has always been recognized in this State, yet since the passage of the statute granting appeals from decrees or judgments overruling demurrers, the court has occasionally felt at liberty to so far depart from the rule as to determine questions involved when the decision would greatly narrow the litigation and it was greatly to the interest of the parties. This exception has been followed and confirmed in subsequent cases. *Phoenix Insurance Co.* v. *Day,* 4 Lea, 247, 249; *Puckett* v. *Richardson,* 6 Lea, 49, 65; *Berry* v. *Wagner,* 13 Lea, 591, 599; *Ballentine* v. *Mayor,* 15 Lea, 633, 650.

It would be idle, in the present case, to send the parties back to the chancery court on a mere technical defect in the form of the presentation of the demurrers, when the points involved have been as fully discussed by counsel as if they had been presented with the highest technical accuracy.

Coming now to the merits of the questions involved, we shall first consider that one which presents the point that the ordinance is fatally defective for uncertainty.

There is no chapter bearing the number 593 in the published Acts of the General Assembly for the year 1909. That part of the reference must therefore be treated as wholly nugatory, but under the maxim, *"Falsa demonstratio non nocet,"* this reference can do no harm if there is sufficient otherwise to identify the act intended to be incorporated. Turning to the Acts of 1909 we find a chapter numbered 479, the caption of which is: "An act to provide revenue for the State of

Tennessee and the counties and municipalities thereof." Section 4 reads: "That each vocation, occupation, and business hereinafter named in this section is hereby declared to be a privilege, and the rate of taxation on such privilege shall be as hereinafter fixed, which privilege tax shall be paid to the county court clerk as provided by law for the collection of revenue." Then follows a list of occupations with their appropriate tax, covering 24½ pages of the book. There is no other act in the volume upon the same subject, or which by any possibility could be mistaken for it, or to which reference could have been made. It is beyond doubt that anyone reading the ordinances copied, and examining the Acts of 1909 to find the revenue bill called for, would inevitably light upon the act above mentioned, and on no other. So, if it be permissible to incorporate matter into an ordinance by reference, no other conclusion can be reached than that the reference was sufficient to save the ordinance from the charge of uncertainty, since section 4 of the act referred to contained full and ample provisions on the subject of privilege taxes assessed against liquor dealers. That such reference is proper under the maxim, "*Id certum est quod certum reddi potest*," is perfectly clear. It constantly occurs in statutes and in deeds, and we can see no exception to it when applied to municipal ordinances. It has often been so applied. It has been held that ordinances establishing grades of streets may properly refer to maps and books on file in a public office as part thereof (McQuillan on

Municipal Ordinances, sec. 137, note 9, citing *Napa* v. *Easterby*, 76 Cal., 222, 18 Pac. 253), also that a prior ordinance may be incorporated in a subsequent ordinance and be carried forward by appropriate language (Id., note 10, citing *Baumgartner* v. *Hasty*, 100 Ind., 575, 586, 50 Am. Rep., 830). See, also, section 545 of the same book, and cases cited thereunder.

The practice has also been recognized in the following cases, which discuss general ordinances purporting to cover by reference a body of municipal offenses: *Kreulhaus* v. *City of Birmingham*, 164 Ala., 623, 51 South., 297, 26 L. R. A. (N. S.), 492, and cases cited therein; *Richards* v. *Town of Magnolia*, 100 Miss., 249, 56 South., 386; *Dismukes* v. *Town of Louisville*, 101 Miss., 104, 57 South., 547. However, in *Kreulhaus* v. *City of Birmingham*, the ordinance was held void because it made no distinction between offenses applicable to municipal corporations and others included within the general description which could not possibly apply to such corporations. This was deemed to make the ordinance fatally uncertain. In *Dismukes* v. *Town of Louisville*, the ordinance was held bad because the general description by reference covered felonies as well as misdemeanors, whereas under the law of the State the town had no authority over felonies. In *Richards* v. *Magnolia* the reference was held good, and the ordinance good, because it confined the power of the city only to misdemeanors of which it was given jurisdiction under the State laws.

So, stopping with section 4 of the Revenue Act of 1909, we think there could be no doubt that the reference was proper, and sufficiently definite. Section 5, however, refers to a class of privileges over which municipal corporations could not possibly have any control, because the act provides that the privilege tax for the kinds of business falling under that section should be paid directly to the comptroller of the treasury of the State, which necessarily excluded both municipal corporations and counties. The same is true of the business of building and loan associations provided for in section 7. The existence of these two sections would, on first view, bring the case within the principle as to uncertainty declared in two of the cases above referred to. We are of the opinion, however, that this result does not follow, because anyone referring to the act for ascertainment of the legislative purpose could not fail to conclude that the intention of the ordinance was to confine its application only to those forms of privilege which were open to municipal corporations under the terms of the act itself. The ordinance referring to the act for authority could not, with any show of reason, be supposed to have included specific items appropriated to the State alone. Under *Dismukes* v. *Louisville* the court held that the intention was to include felonies, and in *Kreulhaus* v. *Birmingham* it was held that the intention was to cover both crimes over which the corporation might have jurisdiction, and those over which it could not have such jurisdiction. Here the case is different, because the

reference is to a specific act, in connection with and in subordination to which the ordinance must be construed; and, so construing it, we are of the opinion, as stated, that the only possible solution is that the purpose was to include only those privileges that were open on the face of the act to municipal corporations; that the city could not have intended to include privilege taxes especially withholden from cities and counties, and devoted altogether to the use of the State.

In disposing of the above matters we have recognized as sound the rule laid down in the cases of *Kreulhaus* v. *City of Birmingham* and *Dismukes* v. *Town of Louisville,* but we are inclined to the opinion that it would have no application to an ordinance in which the improper matters could be clearly distinguished and separated from those properly embraced. The inclusion of matters distinctly beyond the competency of a municipality ought not to be treated as beclouding those as clearly within that competency, or as making the ordiance uncertain. Things indubitably incompetent, and in themselves perfectly certain, should simply be treated as expunged, or nonexistent.

It is insisted for complainant that at all events there was no proper recordation of the ordinance because it did not set out within its body the act of 1909 *in totidem verbis,* and enter it upon the minutes of the corporation. We think this is a view altogether too strict. According to this there could be no registration of a deed which described the land conveyed by reference to another instrument, unless the contents of such

instrument should be bodily transported into the last deed. No one would contend for such a rule as to deeds, yet they are required to be as certain as ordinances.

As to the point that the complainant is not subject to a privilege tax because protected by the commerce clause of the constitution, this is fully covered by *Logan* v. *Brown,* 125 Tenn., 209, 141 S. W., 751, and the federal cases therein cited. The same point was involved in the case of *Southern Operating Co.* v. *Hays,* Ms., Knoxville, September term, 1912, and was decided in the same way. That case is now pending in the Supreme Court of the United States on writ of error, and we need not further discuss the question.

It results that the judgment of the chancellor overruling the demurrer is reversed, the demurrer sustained, and the bill dismissed with costs.