L. A. THOMPSON SCENIC RAILWAY CO. *v.* McCABE.

1. PUBLIC RECORDS—FILING PAPER WITH CITY CLERK—MUNICIPAL CORPORATIONS.

The mere filing of a book entitled "Building Code" with the city clerk by the common council of the city of Detroit would not give it the character of a "public record."

2. MUNICIPAL CORPORATIONS—ORDINANCE—RE-ENACTMENT — VALIDITY—DETROIT CHARTER—BUILDING CODE.

In the passage of an ordinance by the common council of the city of Detroit, mere reference therein to the articles contained in a book entitled "Building Code," and filed with the city clerk, thereby adopting same as part of the ordinance, was not a compliance with the provisions of sections 17 and 20, chap. 1, tit. 3, of its charter, and section 3003, 1 Comp. Laws 1915, requiring re-enactment and publication in full of all ordinances adopted, amended, or re-enacted.

3. SAME—CITY CHARTER—LIMITATIONS.

While the legislature of the State functions under broad constitutional limitations, the common council of a city must act strictly within the powers granted to it in its charter.

4. SAME—ORDINANCES—PENAL—PUBLICATION—VALIDITY.

An ordinance having the effect of a penal statute must be published according to law, and the question of expense in connection therewith may not be considered.

5. SAME—COMPLIANCE WITH CHARTER PROVISIONS.

The attempt of the common council of the city of Detroit to re-enact a building code ordinance within five months of the taking effect of a previous one was in violation of section 10, chap. 16, tit. 4, of the city charter, prohibiting the altering, amending or repealing of such ordinance within the period of one year after the date of its enactment, and thereafter within periods of two years each, unless upon recommendation or requirement of national or State authority, or upon initiatory or referendum provisions of the charter.

Certiorari to Wayne; Hunt (Ormond F.), J. Submitted April 6, 1920. (Calendar No. 29,071.) Decided July 20, 1920.

Mandamus by L. A. Thompson Scenic Railway Company to compel John C. McCabe, commissioner of buildings and safety engineering of the city of Detroit, to issue a building permit. From an order granting the writ, defendant brings certiorari. Affirmed.

*Walter Barlow* (*Clarence E. Wilcox* and *Paul T. Dwyer,* of counsel), for appellant.

*Crandell & Tinkham,* for appellee.

BROOKE, J. Certiorari to mandamus. The facts and legal conclusions based thereon are clearly stated by the learned circuit judge who heard the case, in an opinion which follows:

"Plaintiff has filed in this court petition for a peremptory writ of mandamus to compel the defendant, who is the commissioner of buildings and safety engineering of the city of Detroit, to issue a permit to

plaintiff to build a 'roller coaster or gravity ride,' of wooden construction, sixty-five feet high, on certain lands of plaintiff within the fire limits in the city of Detroit.

"The defendant has declined to issue such permit, basing his reasons for refusal in that the specifications of the proposed structure are in violation of the building code of the city of Detroit claimed to have been adopted by the common council on July 22, 1919, section 350 of which, among other things, provides:

" 'No roller coaster, scenic railway, or other riding, sliding or rolling device, shall be hereafter erected of a greater height from the ground than fifty-five (55) feet, to the highest point, nor shall any such device be built, rebuilt or enlarged within districts No. 1 and 2 unless constructed of fireproof material.'

"It is conceded that plaintiff's lands, on which it desires to build, are located in district No. 2. Counsel for plaintiff and defendant have respectively filed extensive, printed briefs and made oral arguments in support thereof.

"Plaintiff claims right to relief upon two general grounds:

"1. That the new building code, so-called, was never legally adopted;

"2. That the new building code, so-called, referred to in the petition, even though legally adopted, does not prevent plaintiff from procuring a building permit and erecting its roller coaster as stated in its application.

"If the new building code was not legally adopted, it will be unnecessary to consider the second ground; and to this our attention will first be given. It is claimed by plaintiff that the new code was not enacted and published according to the provisions of the charter.

"Section 17, chapter 1, title 3, among other things, provides:

" 'No ordinance shall be revised, altered or amended by reference to its title only, but the section or sections of the ordinance altered or amended shall be re-enacted and published at length.'

"Section 20 of said chapter, among other things, provides:

" 'All ordinances shall be published immediately after their approval for three successive days in a daily newspaper printed in the English language in the city.'

"Section 3003, 1 Comp. Laws 1915, provides:

" 'Within one week after the passage of any ordinance the same shall be published in some newspaper printed and circulated within the city, and the clerk shall immediately after such publication enter upon the record of ordinances, in a blank space to be left for such purpose under the recorded ordinance, a certificate stating in what newspaper and of what date such publication was made, and sign the same officially, and such certificate shall be *prima facie* evidence that legal publication of such ordinance has been made.'

"Paragraphs 7 and 8 of defendant's amended answer sets forth at length the proceeding had relative to the adoption and publication of the new building code, and the closing sentence of paragraph 8 is as follows:

" 'And to have published said building code (Exhibit A) in connection with said ordinance 660-A would have cost said city in excess of $8,000 printers' fees and would have served no useful or necessary purpose whatsoever.'

"It is claimed by defendant that the new building code was printed in the form of a book and filed with the city clerk, and that the ordinance, by its provisions, might make reference thereto and save the cost of publication.

"Section 1 of the ordinance, among other things, provides:

" 'That the building code of the city of Detroit, including the State housing code, approved by the commissioner of buildings and safety engineering on July 1, 1919, and in the custody of the city clerk, be adopted and approved to regulate the construction of buildings; to define the character of materials to be used therein; to regulate the use and occupancy of buildings and signs within the city of Detroit, and incorporate the housing code of the State of Michigan under the following articles:

" 'Article I—Administration.

" 'Article II—Bureau of Buildings.

" 'Article III—Bureau of Safety Engineering,' etc., etc., down to and including Article XXXVII—Garages.

"An inspection of the ordinance as passed, appearing in paragraph 7 of the amended answer, discloses that each and all of Articles I to XXXVII inclusive are barren of all provisions whatsoever.

"In the case of *Power's Appeal,* 29 Mich. 504, at 509, Mr. Justice CAMPBELL uses the following language:

" 'There is only one way in which a common council can act, and that is by written resolution.'

"In behalf of the defense they have cited cases tending to show that an ordinance may be passed referring to existing laws, ordinances and public records, and some cases hold that reference can be made in addition to maps and books which are a part of the public records.

"Giving full probative force to the various cases cited by defendant, we are constrained to hold, and do hereby find and determine that the new building code, so-called, was not enacted and published as required by law, and this being so the other contentions made upon the argument are immaterial to the determination of the matter before the court. As the court understands it, this leaves the old building code in force, and it was conceded upon the argument that the specifications of the proposed structure violated none of those provisions. Accordingly plaintiff is entitled to the writ of mandamus as prayed.

"The effect of this decision being of great public interest, the formal issuance of the writ will be withheld for a reasonable time to permit the corporation counsel to present an application to the Supreme Court for a stay until the matter herein can be reviewed by the Supreme Court."

The so-called "building code" is a book, consisting of 504 sections covering 156 pages. It provides in its last section a penalty in the sum of $25 for a violation of any of its provisions, "each day constituting a separate offense."

It is the contention of the appellant that the book entitled "building code" became a public record when it was filed with the city clerk and therefore that it

was competent for the common council, by means of ordinance No. 660-A, to "adopt and approve" thereof by reference simply to its several articles. We are of the opinion that the mere filing of the book with the city clerk cannot give it the character of a "public record" within the meaning of the cases cited and relied upon by the defendant.

Section 17, chapter 1, title 3, of the city charter, provides:

"All matters of legislation shall be presented, considered, and enacted by the council in the form of ordinances. The style of all ordinances shall be 'It is hereby ordained by the people of the city of Detroit.' "

The charter itself (chapter 1, section 19) provides:

"All ordinances, resolutions, or proceedings receiving the approval of the mayor or having become operative without such approval as herein provided, shall be deposited in the office of the clerk of the city, and he shall safely keep the same."

It is not contended that when the book in question was filed with the city clerk it had been enacted into legislation or ordained by the common council, nor had it received the approval of the mayor or become operative without such approval. It, therefore, was entirely lacking in those characteristics necessary to entitle it to be filed as a "public record." Section 17 of chapter 1, title 3, is a clear limitation upon the powers of the common council and was enacted for the protection of the people who are charged with knowledge of the local laws.

We have examined the cases of *City of Napa* v. *Easterly*, 76 Cal. 222 (18 Pac. 253) ; *Croker* v. *Camden Board of Excise Com'rs*, 73 N. J. Law, 461 (63 Atl. 901) ; *Southern Operating Co.* v. *City of Chattanooga*, 128 Tenn. 196 (159 S. W. 1091, Ann. Cas. 1914D, 720) ; and *Baumgartner* v. *Hasty*, 100 Ind. 575, cited and relied upon by the defendant. The distinction

between the cases, cited and the one under consideration is that the matter incorporated by reference in those cases was either a matter of public record or a statute, while in the case at bar the so-called "building code" was, in a legal sense, a fugitive paper "in the custody of the city clerk."

Reliance is placed by the defendant upon Act No. 174 of the Public Acts of 1917, by means of which, it is said, the State legislature adopted the "boiler code of the American Society of Mechanical Engineers" by reference only. The propriety of this method of legislation has never been questioned, so far as we are advised; but, assuming its entire constitutionality, it should be borne in mind that the legislature of the State functions under broad constitutional limitations whereas the common council of the city of Detroit must act strictly within the powers granted to it in the charter. *City of Kalamazoo* v. *Titus*, 208 Mich. 252; Cooley's Constitutional Limitations (7th Ed.), pp. 163 *et seq.*

The ordinance No. 600-A was published as passed, containing a reference to the so-called "building code" by title. This publication, in our opinion, was not sufficient to comply with the provisions of section 20, chapter 1, title 3. See, also, section 3003, 1 Comp. Laws 1915.

An ordinance having the effect of a penal statute must be published according to law. The citizen who is held accountable for any violation of its provisions is entitled to such notice of its enactment as the law requires and the question of expense in connection with such publication may not be considered.

The foregoing conclusions result in an affirmance of the judgment of the court below.

A further question, however, is discussed in the briefs of counsel. The charter (section 10, chapter 16, title 4) provides:

"No code or ordinance under which the department (of buildings and safety engineering) operates, or any clause thereof, shall be changed, amended, altered or repealed within a period of one year from the date of its enactment, and thereafter within periods of two years each, unless upon the recommendation or requirement of some competent National or State authority, or in accordance with the initiatory or referendary provisions of this charter."

The so-called "old building code" was created by an ordinance effective on March 1, 1919. The ordinance under discussion (No. 660-A) was passed on July 22, 1919—about five months later. The provision of the charter here under consideration would seem to have been infringed by the attempted passage of ordinance No. 660-A. The reasons for such limitation upon the power of the council are obvious; it was, doubtless, considered by the framers that the stability of the rules relative to the character of improvements and the use to which real estate might be put should be maintained for periods of at least two years.

The judgment is affirmed.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.