BECKER *v.* LINCOLN BUILDING CO.

1. CONTRACTS—BUILDING CONTRACT — BREACH OF CONTRACT — EVIDENCE—SUFFICIENCY.

In a suit by the owners of a building against the contractor for an accounting and to enjoin interference with the completion of the building by the plaintiffs, evidence

*held*, sufficient to sustain the finding of the court below that defendant breached the contract.

2. SAME—PROVISIONS OF BUILDING CODE MADE PART OF CONTRACT BINDING UPON PARTIES ALTHOUGH INVALID.

Where the provisions of a building code were made part of the contract the parties were bound thereby, and the fact that the code was afterwards declared unconstitutional is immaterial, since the parties by appropriate reference might make an invalid code or any other paper a part of the contract.

3. SAME—BREACH OF CONTRACT.

Where plaintiffs agreed to deed to defendant the lot upon which the building was to be erected by defendant, and then purchase it back on a contract, but the bank refused to loan defendant money on said deed after it was executed, holding it to be only a mortgage, and in accordance with a new agreement, and in order to enable defendant to borrow the necessary money, plaintiffs executed a mortgage to the bank for $5,000 with directions to pay the same from time to time to defendant, upon which it had received $3,000, it cannot be said that what was done by plaintiffs amounted to a breach of the contract, justifying defendant's refusal to complete the building.

Appeal from Wayne; Lamb (Fred S.), J., presiding. Submitted October 28, 1921. (Docket No. 124.) Decided March 30, 1922.

Bill by Anthony H. Becker and another against the Lincoln Building Company for an accounting, and to enjoin an interference with the completion of a building. Defendant filed a cross-bill asking affirmative relief. From a decree for plaintiffs, defendant appeals. Affirmed.

*Hubert E. Hartman* and *Stanford C. Wastell*, for plaintiffs.

*Edmund E. Shepherd*, for defendant.

MOORE, J.   Plaintiffs were the owners of a lot in the city of Detroit.   On the 29th day of May, 1919,

they entered into a written contract, wherein defendant agreed to construct for plaintiffs, on the lot of the plaintiffs, a two-family flat, according to certain plans and specifications. The plaintiffs were to convey to defendant their title in such lot and the defendant was to construct the building, plaintiffs to pay a total sum of $14,500, $1,000 cash, a credit of $3,000 for the lot and the balance at the rate of $105 per month with interest, etc. On the same day the lot was deeded to defendant, a land contract for the re-conveyance of the land in the usual form was executed between the parties, and delivered to the plaintiffs. The building contract provided that defendant should proceed with the construction of said building with promptness. The contract further provided that if plaintiffs should fail to meet the payments, defendant was given the right to cancel the contract and recover for work done and materials furnished or continue the work and recover the contract price. If, on the other hand, defendant should not proceed and complete the building in accordance with such contract the plaintiffs might take over the building and finish it, holding defendant liable for any additional costs from the money due defendant when the entire job had been completed.

It is claimed the building was to be completed by August 1st, but there was no time limit in the written contract. In the meantime the plaintiffs had sold the house in which they were living at the time the contract was made, and agreed to give possession October 1st, and they got very impatient at the slowness with which the building progressed.

On or about the 1st day of October a controversy arose over the construction of waterproof floors in the bath rooms of said building which plaintiffs claimed were to be constructed under the terms of the contract and necessary in order to conform to the building code

218 Mich.—6.

of the city of Detroit, and which defendant refused to construct, unless plaintiffs paid extra for such work and material.    Correspondence passed between the parties, which we quote:

"October 1, 1919.

"Mr. ANTHONY H. BECKER,
    "774 Leland Ave.,
        "Detroit, Michigan.

"*Dear Sir:*  *In re* two-family flat at lot 102, Dakota avenue.

"The city code requires that gas vents be installed in this building.    The cost of this will be $25.

"The code also requires that waterproof floors be put in all bath rooms.    A terrazzo floor will cost you $100 for each bath room, and cement floor $60 for each bath room.

"We are in receipt of your check for $7.50 covering the cost of surveying, and thank you very much for same.

"Please let us have your check for $225 if you wish a terrazzo floor in each bath room, or $145 if you wish us to have cement floor put in.

"Kindly give this matter your prompt attention, so as not to delay the progress of the building any more than is necessary.

"Yours very truly,
        "LINCOLN BUILDING COMPANY.

"P. S.    The above items are not covered in the specifications, and we must therefore ask that you send us your check to cover the additional expense involved."

"774 Leland St., Detroit, Mich., Oct. 11, 1919.
"LINCOLN BUILDING CO.,
        "Detroit, Mich.

"*Gentlemen:*  *Re* lot No. 104, Dakota Ave.

"Referring to your letter of October 1st in which you demand of us a payment of one hundred (100) dollars for putting in a waterproof floor in each bath room in the flat you are building for us.

"Notwithstanding our contract explicitly provides that you shall complete the building in all respects complying with the local ordinances and building code,

although the same are not explicitly mentioned, we find ourselves at present in a position where we are compelled to pay your demand, because we have already made a contract to deliver our present residence, at a time already past, intending to move into this flat, and we are daily increasing our liability for failure to do so. We are accordingly paying you the two hundred (200) dollars demanded, not because of any recognition on our part, of any liability to you to make such payment, but because our situation forces us to do it, and we protest and shall insist that you are legally liable to us for the money so paid, as paid without consideration.

"Yours truly,<br>(Signed) "ANTHONY H. BECKER,<br>"MINNIE BECKER."

"3003 Woodward Avenue, Oct. 13, 1919.
"Mr. ANTHONY H. and MINNIE BECKER,
    "774 Leland St.,
        "Detroit, Michigan.

*"Dear Sir and Madam:* We have your favor of the 11th inst., handed to us on the same date by Mr. J. W. Farrington, together with check calling for $200, signed by E. A. Becker, and in reply will say that your communication does not state what kind of a waterproof floor you wish us to install in your two family flat at lot 104, Dakota avenue.

"If it is for terrazzo floor, we wish you would kindly mail us letter instructing us to proceed with this kind of a floor, and that the $200 check is sent to us in payment of the work to be done on the terrazzo floors in the bath rooms. We also wish you would state in your letter that the terrazzo floors are extra, not called for in the plans and specifications or contract, with no strings attached to the payment of the check to us, as you know as well as anyone that there is no terrazzo floor called for in either the plans or specifications.

"If you do not want to pay for extras you had better advise us at once and we will stop putting them in. You know as well as we do that it costs money to build in these days.

"The writer was also down to the bank this morning and learned from the manager of the mortgage de-

partment that you had not left the deeds and contracts with him, as you promised you would do. This is to inform you that unless this is done at once, it is our intention to stop the work after this week on this building, after which time it will be necessary for you to pay us cash in full for all work, labor and material put into this job, and we will be compelled to insist that the money be paid for all work, labor and material before it is furnished in this job.

"Please be governed accordingly.
                    "Yours very truly,
                         "LINCOLN BUILDING COMPANY,
                                   President."

            "(Letter Head Rood & Visscher.)
                              October 15, 1919.
"LINCOLN BUILDING CO.,
      "Detroit, Michigan.
      "*Gentlemen:* We are writing you at the request of Anthony Becker and Minnie Becker, in reply to your letter of October 13, 1919, addressed to them, in which you acknowledge receipt of two hundred (200) dollars, paid under protest to induce you to complete the building of an apartment on lot 104, Dakota avenue, of this city, according to the plans and specifications and contract executed by you and them May 29, 1919.

      "The exigency of Mr. and Mrs. Becker's situation is such that they are compelled to demand of you, and they do hereby demand of you, that you complete the said building according to the contract, putting in the floors in the bath rooms as directed by Mr. and Mrs. Becker.

      "This is also written to notify you that unless you immediately signify your intention to fulfill the contract in all respects at once they will immediately proceed to complete it themselves at your expense, as they have a right to do under your contract.

      "This is also written to demand of you the return of the two hundred dollars paid under protest as above stated.
                    "Yours truly,
                         "ROOD & VISSCHER,
                    (Signed) "By John R. Rood.
"J.R.R./W."

"3003 Woodward Avenue, October 15, 1919.
"JOHN R. ROOD, Esq.,
     "637 Dime Bank Bldg.,
          "Detroit, Michigan.
     *"Dear Sir: Re* two family flat at lot 104, Dakota.

"This is to acknowledge receipt of your valued favor of October 15th.    We are inclosing herewith copy of letter written to Mr. Becker•today.

"We wish to advise that the second paragraph of your letter is not clear to us.    When you advise that they demand us to put in the floors in the bath rooms as directed by Mr. and Mrs. Becker, we believe you are aware of the fact that this is not in accordance with the contract.

"This is also to advise you that they have in their possession a certain warranty deed and land contract which belongs to us, and which we are compelled to demand, and we do demand that they be turned over to us without delay, before they have carried out a part of the contract.

"The two hundred dollars referred to in your letter was paid to us for putting in terrazzo floors, and it was so noted on the back of the check.    If they do not wish terrazzo floors put in the bath rooms we will return the money.

                         "Yours truly,
                         "LINCOLN BUILDING COMPANY,
          By,                                        "

          "(Letter Head Lincoln Building Company)
                              "October 15, 1919.
"Mr. A. H. BECKER,
     "774 Leland St
          "Detroit, Michigan.
     *"Dear Sir:* This is to acknowledge receipt of letter dated October 15, 1919, from Rood & Visscher, attorneys-at-law, handed to us by Mr. J. W. Farrington, in presence of Mrs. Minnie Becker, which was in answer to our communication of October 13, 1919.

"Upon receipt of the above letter from your attorney we telephoned the Peninsular State Bank, and were advised that the warranty deed and land contract, deeding the lot over to us, and the sale of the lot and completed building to you had not been turned over to them.    When the deed and contract is turned over

to the bank you will have carried out a part of the contract.

"However, in addition to this, we must also demand payment for all extras furnished on this job, either where material was furnished in excess of the contract price, or where labor was furnished in excess of the contract price.   If you will advise us of your intention to do this, we will mail you itemized statement of all material and labor furnished on the building in excess of the contract price.   You know as well as we do that the contract does not state that extras are to be furnished gratis, and we thought you understood the contract well enough to know that you would have to pay for them when put in under instructions to us received from you.

"Regarding the check for two hundred (200) dollars which your attorney demands of us to return to you, wish to advise that our letter of October 13th stated under what conditions we accepted this check.

"Kindly let us have your prompt and definite advices regarding these matters, and oblige.
                          "LINCOLN BUILDING COMPANY,
          By................., President."

The parties did not get together and on October 16, 1919, plaintiffs filed the bill of complaint in this cause asking that defendant be decreed to pay the $200 alleged to have been wrongfully extorted from plaintiffs; that the defendant come to an accounting with plaintiffs for the several breaches of the contract alleged to have been committed by defendant, and for damages; that plaintiffs have credit on their land contract for the costs and expense to which they would be put in completing the building, and praying for an injunction restraining defendant from interfering with plaintiffs' completion of the building.   A preliminary injunction was issued in conformance with plaintiffs' prayer and the plaintiffs proceeded to take over the job and finish the work at plaintiffs' expense, the defendant continuing on the job for about a week but not paying the men, and finally abandoning it on the

25th day of October, 1919, by giving the plaintiffs notice in writing that nothing further would be done in the construction of the building by the defendant and refusing to pay men employed on the construction of the building.

Defendant filed its answer and denied all allegations of wrong doing, and thereafter filed its supplemental answer and cross-bill, averring that the terms and conditions of said agreement providing for the conveyance by deed to defendant of the lot owned by plaintiffs were not complied with, and that plaintiffs neglected and failed to execute and deliver said deed and otherwise breached the building contract, causing defendant to notify plaintiffs in writing of their decision to rescind the said contract.    Defendant further alleges that it did proceed to complete the erection of the building with due diligence, but that the plaintiffs so interfered with the orderly progress of the performance of the work that they breached the spirit of the building contract, by insisting on the installation of items of labor and material not contemplated in the contract.    The cross-bill asked for affirmative relief.    A hearing was had in open court.    The court found for the plaintiffs on their bill of complaint and against the defendant on its answer and cross-bill, and a decree was signed accordingly.    The case is brought into this court by appeal.

Stated briefly it is the claim of defendant:

(1)  That it did not breach its contract.

(2)  That the building code offered in evidence was improperly received for two reasons.    (*a*) It was not the "building code" contemplated by the parties when the contract was signed.    (*b*) The building code offered in evidence has been held by this court to be unconstitutional, counsel citing *Thompson Scenic Railway Co.* v. *McCabe*, 211 Mich. 133.

The third contention is that plaintiffs breached the contract.

1. Is there testimony that defendant breached the contract as the chancellor found? We have already quoted the correspondence. We now quote from the testimony of Mr. Farrington, who was hired by the plaintiffs with the consent of defendant to see if the work could not be expedited.

"Things went along pleasantly for awhile, for a little time, until the matter of the bath room floors came up—the city code. It was a matter of waterproof floors being put into the bath rooms. Mr. Scheurman would not have them put in. I don't remember the date they refused to proceed. * * * I talked with Mr. Scheurman, F. T., president. I told him that the vent was plainly on the plans and that as it was it was a joke, and with reference to the floor that he had promised that he would put in a terrazzo floor, and he said he had promised to do it and he knew that a waterproof floor had to go in, but he had changed his mind and would not put it in. * * * I was present at conferences during which the matter of the bath room floor was discussed between Mr. Scheurman and Mrs. Becker. I think the first was when Mrs. Becker and Mrs. Appel and myself went to Mr. Scheurman. I don't remember the date. I think that was probably a week or less before the letter was written by Mr. Rood. I think about a week or less. That would be about the 7th or 8th of October. Mrs. Becker offered, or tried to negotiate with Mr. Scheurman about putting it in. Mr. Scheurman repeated that he had agreed to put in the floor, but he had changed his plans. He gave no reason for that change. She asked him, please to do this work and he replied that he would when he had time if she would pay this $200, as demanded by him. After that I don't remember what was done. He said that he would put in the terrazzo floor for $200. After that, Mr. Rood was consulted.

"I was present at the time when Mrs. Becker got the note of protest to Mr. Scheurman. I was there with Mrs. Becker. After reading the letter, Mr. Scheurman said that he would not do the work, that he would refuse to continue. He said that he refused to continue the work.

"*Q.* He did not refuse only to put in the floors?

"*A.* According to the letter he had written, which called for Mr. Rood's letter. After Mr. Scheurman said that he would not do the work, I said we will proceed with the work according to the contract at your expense. He said, go ahead, I will not."

There was other testimony to the same effect, which taken in connection with the correspondence shows a breach of the contract on the part of the defendant.

2. Was the building code improperly introduced in evidence? (*a*) It is claimed the code which was introduced in evidence was not approved by the commissioner of buildings until July 1, 1919, while the contract was made in May of that year. We do not regard it as very material whether the proper code was introduced in evidence or not.

Mr. Farrington testified without objection:

"I am acquainted with the provisions of the code. It provides any kind of waterproof floors. He wanted $100 extra for putting in those floors for each bath room."

The defendant knew what the code was for in its letter of October 1st it is written:

"The city code requires that gas vents be installed in this building. The cost of this will be $25. The code also requires that waterproof floors be put in all bath rooms. A terrazzo floor will cost you $100 for each bath room, and cement floor $60 for each bath room."

(*b*) The fact that the code was afterwards declared unconstitutional is not material. The contract might by appropriate reference make an invalid code part of the contract just as it might make any other paper a part of the contract. The defendant did so make it. It knew its provisions and refused to comply with them. See *Martus* v. *Houck*, 39 Mich. 431 (33 Am. Rep. 409), and *Ginsberg* v. *Myers*, 215 Mich. 148.

3. Did the plaintiffs breach the contract so as to

entitle the defendant to the affirmative relief it asks in its cross-bill? This contention is based upon the claim that, when defendant sought to borrow money at the bank, the bank officials declined to make the loan upon the theory that the deed from the plaintiffs to the defendant with the land contract back really constituted a first mortgage and it is claimed that an agreement was made that defendant would deed the land back to the plaintiffs who then would make a mortgage to the bank and after doing so could make a second deed to the defendant. There was talk to this effect, but defendant never deeded the land back to the plaintiffs, and they never made the second deed. What occurred was that the deed made by the plaintiffs to the defendant when the contract was made was left with the bank, and withheld by it from the registry, and the plaintiffs made a mortgage for $5,000 directly to the bank with instructions to pay the money from time to time to the defendant, and this was done so that when the trouble arose $3,000 had been paid to the defendant by the bank. This situation is shown by the cross-examination of the financial officer of the bank, which we quote in part as follows:

"*Q.* Was there any other difficulty about the title than the title that you did not want to have a loan made to a party who had the deed as security with a land contract back whereby you considered it a mortgage?

"*A.* Not as I had any knowledge of. That was the thing preliminary to our part of it.

"*Q.* But your whole trouble was that with a land contract back you regarded it as a mortgage?

"*A.* Yes. I wanted the loan to the person who had the real title. The Lincoln Building Company deeded the property back to the Beckers. They executed a deed so that the bank would make the mortgage.

"*Q.* Have you that deed here—don't you think that the fact is that you retained the original deed and insisted on having your mortgage put on record and retaining that deed so you had that deed in your files?

"*A*. I rather think that is so now, but that was not my impression at the time, but I see from the file that is the case.

"*Q*. You kept the deed?

"*A*. Yes, the original deed by Mrs. Becker to the Lincoln Building Company, we kept.

"*Q*. Then no conveyance was made by the Lincoln Building Company to the Beckers?

"*A*. No, sir, not as far as I know.

"*Q*. You still have possession of the deed by the Beckers going to the Lincoln Building Company and by them surrendered to you?

"*A*. No, I don't see it.

"*Q*. You have it now, haven't you, in your files?

"*A*. Yes, May 20, 1919.

"*Q*. Exhibit 18.

"*A*. Yes."

The plaintiffs made the deed in the first instance as was provided in the contract and co-operated with defendant in its efforts to get financial aid from the bank.

A careful reading of this voluminous record satisfied us that the decree is right. It is affirmed, with costs to the plaintiffs.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.